## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KPH Healthcare Services, Inc., a/k/a Kinney Drugs, Inc., et al., | : : : | No. 1:20-cv-08754 |
| v. | : : : | |
| Abbvie Inc., et al. | : : | |
| KPH Healthcare Services, Inc., a/k/a Kinney Drugs, Inc., et al., | : : : | No. 1:20-cv-08756 |
| v. | : : : | |
| Hetero USA Inc., et al. | : : : : | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF KPH'S MOTION
## FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL
## FOR THE DIRECT PURCHASER CLASS

Dianne M. Nast and Michael L. Roberts seek appointment as interim co-lead counsel for the direct purchaser class, which alleges that Defendants unlawfully conspired to monopolize the Bystolic market in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Ms. Nast and Mr. Roberts are the best candidates to represent the direct purchaser class not only because of the diversity they will bring to leadership, but also because they have proven their experience, knowledge, integrity, and civility through decades of successful practice in complex litigation.

## I.   PROPOSED INTERIM CO-LEAD COUNSEL MEET THE REQUIREMENTS OF RULE 23(g)

### A.  Legal Standard

Federal Rule of Civil Procedure 23(g) allows a court to "designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See Sullivan v. Barclays PLC*, No. 13-cv-2811, 2013 WL 2933480, at *1 (S.D.N.Y. June 11, 2013). In doing so, the Court looks to:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). The court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *Mun. Derivatives,* 252 F.R.D. at 186.

"When more than one choice of counsel satisfies these requirements for adequacy, Rule 23(g)(2) provides that the court 'must appoint the applicant best able to represent the interests of' the plaintiffs. *Mun. Derivatives,* 252 F.R.D. at 186 (*quoting* Fed. R. Civ. P. 23(g)).

Ms. Nast and Mr. Roberts satisfy all the requirements of Rule 23(g) and possess qualities that make them "best able to represent the interests of the plaintiffs." *See id.* They have proven this through their joint leadership in other complex antitrust litigation, such as *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa.), and *In re Direct Purchaser Insulin Pricing Litig.*, No. 20-cv-3426 (D.N.J.). They have the expertise, knowledge, integrity, and resources necessary to effectively and efficiently prosecute this complex antitrust class action.

### B.  Dianne Nast and Michael Roberts Have Extensive Complex Litigation Experience and are Knowledgeable About the Law

#### 1.  <u>Dianne Nast</u>

Dianne Nast has substantial experience in leading large, complex MDL antitrust class action litigation, including pharmaceutical antitrust cases.[1] District Courts previously have appointed Ms. Nast to leadership positions, and she has worked extensively in pharmaceutical antitrust cases, as addressed in more detail on page five of this memorandum.

Ms. Nast is a *magna cum laude* graduate of Rutgers University School of Law. From 1976 to 1995, she was with the Philadelphia law firm of Kohn, Nast & Graf, P.C. (now Kohn, Swift & Graf, P.C.) and was elected a shareholder in 1983. She was also an officer and director from 1983 until she left the firm in 1995. She then co-founded and was an officer and a senior shareholder at RodaNast, P.C. from 1995 to 2012, and subsequently founded her current firm, NastLaw LLC, in Philadelphia in 2012.

Ms. Nast holds an AV Martindale-Hubbell rating. She has been selected to be listed in each edition of *The Best Lawyers in America* since 2003. The *National Law Journal* has selected her as one of the nation's top fifty women litigators.

Ms. Nast was selected by *Philadelphia Magazine* as one of Philadelphia's Best Complex Litigation Lawyers. She has been named by *Super Lawyers* as one of Pennsylvania's Top Fifty Women Lawyers. She appears in numerous *Who's Who* publications.

In April 2015, the American Bar Association Tort and Trial Practice Section awarded Ms. Nast its Pursuit of Justice Award. In June 2016, Ms. Nast was selected to receive a Lifetime Achievement Award from *The Legal Intelligencer*, Pennsylvania's leading legal newspaper which

---

[1] Ms. Nast's curriculum vitae is attached as Exhibit 1 to her supporting declaration.

covers statewide and national developments in the law. This award honors decades of accomplishments by Ms. Nast.

Ms. Nast was appointed by Chief Justice William H. Rehnquist to a five-year term as Chair of the Board of Directors of the Federal Judicial Center Foundation. She served as a member of the Board of Directors of the Center's Foundation for eleven years.

Judge Edward Becker, then Chief Judge of the United States Court of Appeals for the Third Circuit, appointed Ms. Nast to serve as a member of the fifteen-member Third Circuit Task Force on Selection of Class Counsel. The Task Force issued a report, *Selection of Class Counsel*, 208 F.R.D. 340 (2002), which has been cited over 100 times in court opinions. The American Law Institute selected her to serve on its Principles of the Law of Aggregate Litigation project.

Ms. Nast chaired the Lawyers Advisory Committee for the United States Court of Appeals for the Third Circuit and served a three-year term on that Committee. She served for eight years on the Third Circuit's Committee on Revision of Judicial Conduct Rules of the Judicial Council and on the Judicial Conference Long Range Planning Committee.

Ms. Nast has served as Lawyer Chair of the Judicial Conference of the United States Court of Appeals for the Third Circuit. She is a member of the Historical Society of the Third Circuit and chaired the Circuit's Centennial Celebration.

The late Chief Judge Alfred L. Luongo selected Ms. Nast to Chair the Eastern District of Pennsylvania's Lawyers Advisory Committee, and she served for four years in that position. She served for three years as President of the Historical Society for the United States District Court for the Eastern District of Pennsylvania and as Editor of the Society's Annual Historical Calendar.

Ms. Nast is a member of the American Bar Association Litigation Section, where she has served on the Task Force on State Justice Initiatives, the Task Force on the State of the Justice

System, and the Task Force on Strategic Planning. She served a three-year term on the Section's Council and was a Section Division Director. She co-chaired the Section's Antitrust Committee.

In May 2015, Ms. Nast received the Pursuit of Justice Award from the American Bar Association's Tort, Trial, and Insurance Practice section. She was a Delegate to the American Bar Association's House of Delegates and the Pennsylvania Bar Association's House of Delegates. She served as a member of the Philadelphia Bar Association's Board of Governors.

Ms. Nast is a Fellow of the American Bar Foundation. She has been elected to membership in the American Law Institute, where she has served for over three decades. She is a member of the Board of Directors of the American Antitrust Institute. She served as a member of the Board of Advisors of the Sedona Conference and is a member of the Public Justice Foundation.

For six years, Ms. Nast served as a Director on the Board of the Public Defender's Office of Philadelphia. Ms. Nast was selected as one of a small group of Philadelphia attorneys to be appointed Judge Pro Tempore, serving as presiding Judge in major civil jury cases in the Court of Common Pleas.

An exemplar listing, in alphabetical order, of some of the class actions in which Ms. Nast has served as Lead Counsel or an Executive Committee Member includes the following:

> *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, No. 13-cv-454 (S.D. Ill.) ("Dairy Antitrust Litigation"), before the Honorable Nancy J. Rosenstengel;
>
> *In re Children's' Ibuprofen Oral Suspension Antitrust Litig.,* No. 04-mc-535 (D.D.C.), before the Honorable Ellen S. Huvelle;
>
> *In re Direct Purchaser Insulin Pricing Litig.*, No. 20-cv-3426 (D.N.J.), before the Honorable Brian R. Martinotti;
>
> *In re Effexor XR Antitrust Litig.,* No. 11-cv-5479 (D.N.J.), before the Honorable Peter G. Sheridan;

*In re Generic Pharms. Pricing Antitrust Litig.,* No. 16-md-2724 (E.D. Pa.)., before the Honorable Cynthia M. Rufe;

*In re Nat'l Football League Players' Concussion Injury Litig.,* No. 12-md-2323 (E.D. Pa.), before the Honorable Anita B. Brody;

*In re Nifedipine Antitrust Litig.*, No. 03-ms-223 (D.D.C.), before the Honorable Richard J. Leon;

*In re Wellbutrin SR Antitrust Litig.*, No. 04-cv-5525 (E.D. Pa.), before the Honorable Bruce W. Kauffman and, subsequently, the Honorable Lawrence F. Stengel;

*Nichols v. SmithKline Beecham Corp.*, No. 00-cv-6222 (E.D. Pa.) ("Paxil Antitrust Litig."), before the Honorable John R. Padova;

*SAJ Distributors, Inc. v. SmithKline Beecham Corp.,* No. 04-cv-23 (E.D. Va.) ("Augmentin Antitrust Litigation"), before the Honorable Henry C. Morgan, Jr.; and

*SAJ Distributors, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,* No. 05-cv-2459 (D.D.C.) ("Ovcon Antitrust Litigation"), before the Honorable Colleen Kollar-Kotelly.

Ms. Nast and her firm possess and will devote the resources necessary to efficiently prosecute this litigation on behalf of the direct purchaser class. Through her leadership in other complex antitrust class actions, Ms. Nast has gained valuable insight into what is needed to successfully litigate such cases. She and her firm will devote the time and advance the funds necessary to obtain and analyze large numbers of complex documents, take depositions, retain experts, and prepare the case for trial.

2. **Michael Roberts**

Michael Roberts also has significant leadership experience in complex commercial litigation, including appointments as co-lead counsel, class counsel, and to plaintiffs' executive

committees.[2] More specifically, Mr. Roberts' significant involvement in antitrust class actions includes the following:

> *Dairy Antitrust Litigation*, No. 13-cv-454 (S.D. Ill.) (Settled for $220 million; Co-Lead Counsel for the certified Direct Purchaser Plaintiffs Class);

> *In re Direct Purchaser Insulin Pricing Litig.*, No. 20-cv-3426 (D.N.J.) (Interim Co-Lead Counsel);

> *In re Generic Pharms. Pricing Litig.*, No. 16-md-2724 (E.D. Pa.) (PSC Member for the Direct Purchaser Plaintiff putative class);

> *Fond du Lac Bumper Exchange Inc v. Jui Li Enterprise Co. Ltd.,* No. 09-cv-852 (E.D. Wis.) ("Aftermarket Sheet Metal Antitrust Litigation") (Settled; Co-Lead Counsel for Indirect Purchaser Plaintiffs and Class Counsel);

> *In re Parking Heaters Antitrust Litig.*, No. 15-mc-940 (E.D.N.Y.) (Settled; Co-Lead Interim Counsel for Direct Purchaser Plaintiffs);

> *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-2819 (E.D.N.Y.) (Settled; Plaintiffs' Executive Committee for Direct Purchaser Plaintiffs);

> *In re Wellbutrin SR Antitrust Litig.*, No. 04-cv-5525 (E.D. Pa.) (Settled; Trial Team for Direct Purchaser Plaintiffs);

> *Augmentin Antitrust Litig.*, No. 04-cv-23 (E.D. Va.) (Settled; Class Settlement Counsel for Direct Purchaser Plaintiffs);

> *Paul Peek, D.D.S. v. Microsoft Corp.*, No. 04-cv-480 (Circuit Court of Lonoke County, Arkansas, First Division) ("Microsoft Antitrust Litigation") (Settled; Co-Lead Counsel); and

> *In re Effexor XR Antitrust Litig.,* No. 11-cv-5479 (D.N.J.) (Discovery Committee Co-Chair for Direct Purchaser Plaintiffs).

Mr. Roberts also has been significantly involved with complex consumer actions, including:

> *Nat'l Trucking Fin. Reclamation Servs., LLC vs. Pilot Corp.* No. 13-cv-250 (E.D. Ark.) (RICO Action; Co-Lead Counsel);

---

[2] Mr. Roberts' curriculum vitae is attached as Exhibit 2 to Ms. Nast's supporting declaration.

> *In re Heartland Payment Systems Inc. Customer Data Security Breach Litig.*, No. 09-md-2046 (S.D. Tex.) (Steering Committee Member); and
>
> *Ori v. Fifth Third Bank*, No. 08-cv-432 (E.D. Wis.) (Co-Lead Settlement Class Counsel).

Judge Moody said the following about counsel, including Mr. Roberts, in the November 25, 2013 Fairness Hearing in the *National Trucking* litigation:

> I have been impressed with the quality of the counsel here on both sides and also by the team that did the audit, the team that did the notice, and all of the oversight that has been done to ensure that all of the class members are being treated fairly and are compensated in a reasonable and adequate way. So I do want to commend everyone that's participated in this, all the lawyers and all of the people that have provided support to the settlement because as all of you have pointed out, I think this is an exceptional effort by both sides and has inured to the benefit of everyone in this class.

Mr. Roberts is licensed in Arkansas, Florida, Tennessee, Texas, New York and Illinois. He is also licensed before the United States Supreme Court and many United States Federal District Courts.

Mr. Roberts and his firm possess and will devote the resources necessary to assist in the prosecution of this litigation on behalf of the direct purchaser class, as they have in other complex antitrust actions. The firm's business model allows its attorneys to devote their time to complex direct purchaser actions such as this one and the firm to advance the funds necessary to obtain and review very large numbers of complex documents, take depositions, retain experts, and advance all other necessary costs required through trial and beyond.

## II.    PROPOSED INTERIM CO-LEAD COUNSEL WILL PROMOTE EFFICIENCY AND ECONOMY

"[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for

Complex Litigation (Fourth) ("MCL") at § 21.11 (2004). This will promote efficient case management where there are "multiple, overlapping class actions that require extensive pretrial coordination" pending in a single district. *See Deangelis v. Corzine*, 286 F.R.D. 220, 223 (S.D.N.Y. 2012) (quoting *In re LIBOR–Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, 2011 WL 5980198, at *2 (S.D.N.Y. Nov. 29, 2011)).

Consistent with Rule 23(g), which prescribes the requirements for the appointment of interim lead class counsel, Ms. Nast and Mr. Roberts have an abundance of experience in litigating pharmaceutical antitrust cases and have brought those cases to successful conclusions on behalf of direct purchaser classes in the past. They have done and continue to do substantial work in investigating these claims and are committed to this litigation. They and their firms will devote the substantial personal time, energy, and major financial resources needed to bring this important litigation to the best possible result. *Mun. Derivatives*, 252 F.R.D. at 186-87 (considering the resources of firms seeking appointment as interim lead counsel, particularly when the defendants are large corporations with "substantial financial and legal resources."). They will efficiently represent the putative direct purchaser class with respect to all matters, including pleadings, motions, discovery, class certification, experts, damages, and settlements.

**A.  Ms. Nast and Mr. Roberts are Best Able to Represent the Interests of the Class.**

Ms. Nast and Mr. Roberts are prepared to work cooperatively and efficiently with all other direct purchaser counsel and to coordinate with them to avoid unnecessary cost and delay on matters such as filings, communications, and discovery. As interim co-lead class counsel, they anticipate delegating work responsibly to other firms, including Garwin Gerstein & Fisher LLP and Berger Montague PC, which separately filed a motion for appointment as interim co-lead counsel on behalf of the direct purchaser class.

This Court denied their motion because at the time, Gerstein and Berger were the only two firms that had filed a putative class action lawsuit on behalf of a direct purchaser class and they had not demonstrated any additional efficiency or benefit they could have been achieved with a leadership appointment. *See City of Providence R.I. v. Abbvie Inc.,* No. 20-cv-7492, Opinion and Order at 17-18 (S.D.N.Y. Oct. 13, 2020) (Liman, J.).[3]

Now, however, multiple law groups represent direct purchaser classes, so it is appropriate for this Court to decide which applicants are best able to represent the interests of the class. *See Deangelis*, 286 F.R.D. at 223 ("Where there are multiple lead counsel applicants, and each are 'adequate' as evaluated under the criteria enumerated in Rule 23(g)(1)(A), 'the court must appoint the applicant best able to represent the interests of the class.'"). Plaintiff KPH submits that appointment of their attorneys, Ms. Nast and Mr. Roberts, will best reduce duplicative work, eliminate waste, and achieve a speedy resolution to this litigation.

In its September 9, 2020 letter application, JM Smith proposed that their attorneys, Gerstein and Berger, share litigation responsibilities with a team of four law firms with which those attorneys regularly work. *JM Smith Corp. v. Forest Labs. Inc.,* No. 20-cv-5735, Motion at 4-5 (Doc. 45) (S.D.N.Y. Sept. 9, 2020). JM Smith provided amounts of settlements previously obtained by Gerstein, Berger, and its proposed executive committee members as support for appointing the Gerstein team. *Id.* at 3 n.4.

Ms. Nast and Mr. Roberts similarly have achieved substantial settlements. *See*, *e.g.*, *Dairy Antitrust Litig.,* No. 13-cv-454 (S.D. Ill.) (Ms. Nast and Mr. Roberts served as co-lead counsel; the case settled for $220 million); *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 12-md-2323 (E.D. Pa.) (Ms. Nast was on the settlement counsel team; the case settled for more

---

[3] This Opinion and Order is attached as Exhibit 3 to Ms. Nast's supporting declaration.

than $1 billion). Large settlements, however, are not what courts focus on when considering the appointment of interim lead class counsel.

Rather, the "most important" factor for appointing a leadership structure is the ability of counsel to "achiev[e] efficiency and economy without jeopardizing fairness to the parties," using a number of attorneys that "should not be so large as to defeat the purpose of making such appointments." MCL at § 10.221. Ms. Nast and Mr. Roberts have considered these matters, and in furtherance of the goals of efficiency and economy, they have submitted sample case management orders, including a sample order for monitoring common benefit time and expense submissions, a sample protective order based on this Court's model protective order, and a sample ESI order.[4]

"Ultimately, '[t]he goal of all the procedures surrounding the appointment of class counsel ... is to establish appropriate structures and monitoring mechanisms to substitute for the ordinary attorney-client relationship and to assure performance of the fiduciary responsibilities owed by both the lawyer and the lead plaintiff to the class.'" *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600, 2012 WL 569195, at *1 (S.D.N.Y. Feb. 14, 2012) (*quoting* Stephen A. Saltzburg et al., *Third Circuit Task Force Report on Selection of Class Counsel*, 74 Temp. L. Rev. 689, 696 (2001).[5]

Ms. Nast and Mr. Roberts will ably meet the Second Circuit's expectation of a zealous pursuit of claims on behalf of the direct purchaser class within the boundaries of legal and ethical rules, and will act within the bounds of civility that have always been a hallmark of their practices. *See generally Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol*, 194 F.3d 323, 341 (2d Cir.

---

[4] These sample orders are attached as Exhibits 4, 5 and 6 to Ms. Nast's supporting declaration.

[5] Third Circuit Judge Edward Becker, then Chief Judge, appointed Ms. Nast as a member of that task force.

1999) ("[I]n our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules.").

### B.  Courts Recognize the Need for Diversity When Appointing Class Counsel.

Ms. Nast and Mr. Roberts not only have considerable experience in antitrust and complex litigation, but they also add diversity to leadership, in that Ms. Nast is a woman, and Mr. Roberts is the owner of an Arkansas-certified minority law firm. Federal courts have cited diversity as an important consideration in appointing leadership roles.

For example, this summer, Judge Donato rejected a proposed leadership structure in part because all four proposed co-lead counsel were men. *See In re Robinhood Outage Litig.*, No. 20-cv-1626, Order Re Consolidation and Interim Class Counsel at ¶ 11 (Doc. 59) (N.D. Cal. July 14, 2020).[6] The court later approved a revised roster designating a woman as co-lead and six women on the executive leadership committee. *In re Robinhood Outage Litig.*, No. 20-cv-1626, Order Re Interim Counsel and Briefing Schedule at ¶¶ 1-2 (Doc. 65) (N.D. Cal. July 22, 2020).[7]

Also recognizing the need for diversity among class counsel, in May 2020, District Judge Robin L. Rosenberg made it clear that diversity was a key factor in her selection of the team to lead the Zantac MDL. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-md-2924, Pretrial Order # 20 at 2-4 (Doc. 685), (S.D. Fla. May 8, 2020).[8] At page 3 of the Opinion, the Court noted that only 31% of the applicants were female and observed that "much work remains to be done to give judges an applicant pool that reflects the diversity of not only our society but our profession, particularly at the senior levels of leadership." *Id.* at 3.

---

[6] This order is attached as Exhibit 7 to Ms. Nast's supporting declaration.

[7] This order is attached as Exhibit 8 to Ms. Nast's supporting declaration.

[8] This order is attached as Exhibit 9 to Ms. Nast's supporting declaration.

This Court likewise found diversity to be a relevant factor in appointing interim lead counsel for the End-Payors in the Bystolic litigation, noting that "[f]or well over a decade now, the courts have emphasized the importance of diversity in their selection of counsel." *City of Providence R.I.*, Opinion at 13-14 (citing cases).

This Court continued:

> There is an obvious social value in promoting diversity within the ranks of the legal profession. Historically, there has been a dearth of diversity within the legal profession. Although progress has been made, statistics reflect that today, still just one tenth of lawyers are people of color and just over a third are women. A firm's commitment to diversity, though, does not just demonstrate that it shares with the courts a commitment to the values of equal justice under law. Rather, the intuition underlying the diversity criterion is soundly grounded in the Court's obligation to select counsel who will best represent the interests of the class. In particular, that a firm is able to field a diverse team provides some indication—albeit crude and imperfect—that the firm is one that is able to attract, train, and retain lawyers with the most latent talent and commitment regardless of race, ethnicity, gender, or sexual orientation. That intuition is recognized—and validated—by the views of a consensus of corporate general counsels of some of the leading companies in the United States, each charged with fiduciary duties to protect the interests of the absent shareholders and, on their behalf, to select counsel best able to represent the corporation. In their choice of counsel, they have emphasized the importance of a commitment to make efforts to ensure a diversity of minority and women lawyers in the associate and partner ranks. There is no reason why the courts, faced with a similar choice of selecting counsel, but this time on behalf of putative absent class members, should not consider and give weight to that same factor.

*Id.* at 14-15.

While the End-Payor litigation offered multiple options with women in leadership positions, that is not the situation in the direct purchase litigation. This factor weighs in favor of appointment of Ms. Nast and Mr. Roberts.

### III.    CONSOLIDATION OF THE DIRECT PURCHASER CASES APPEARS APPROPRIATE.

Consolidation of the direct purchaser cases makes sense. The federal rules provide that "[i]f actions before the court involve a common question of law or fact, the court may ... (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Rule 42 is a "valuable and important tool of judicial administration" that should be liberally employed "to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (citations omitted).

Because the *JM Smith* and *KPH* actions involve commons question of law and fact, the gains in efficiency to the Court and the parties outweigh any risks of prejudice, and consolidation appears appropriate. *See, e.g.*, *Szymczak v. Nissan N. Am., Inc.*, Nos. 10-cv-7493, 12-cv-1495, 12-cv-2149, 2012 WL 1877306, *1 (S.D.N.Y. May 15, 2012).

### IV.    CONCLUSION

Dianne Nast and Michael Roberts fulfill all Rule 23(g) requirements. They have investigated the claims at issue. They know the applicable law. Their firms will commit the resources necessary to efficiently and effectively represent the class of direct purchasers. They will bring considerable experience, integrity, civility, and diversity to leadership. They will strive to achieve efficiency and economy. For these reasons, Plaintiff KPH respectfully requests that Ms. Nast and Mr. Roberts be appointed interim co-lead counsel for the direct purchaser class.

Dated: October 20, 2020                    Respectfully Submitted,

*/s/ Dianne M. Nast*
Dianne M. Nast
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Telephone: (215) 923-9300
Fax: (215) 923-9302
dnast@nastlaw.com

Michael L. Roberts
Stephanie Egner Smith
**ROBERTS LAW FIRM, P.A.**
1920 McKinney Avenue, Suite 700
Dallas, Texas 75201
Telephone: (501) 952-8558
mikeroberts@robertslawfirm.us
stephaniesmith@robertslawfirm.us

*Counsel for Plaintiff KPH Healthcare Services, Inc.*
*a/k/a Kinney Drugs, Inc. and the putative Direct*
*Purchaser Class*